[Cite as *NTL Collegiate Student Loan Trust-1, A Delaware Statutory Trust v. Payne*, 2020-Ohio-3553.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| NTL [Collegiate] Student Loan Trust-1, A Delaware Statutory Trust, | : | |
| | : | |
| Plaintiff-Appellee, | : | No. 18AP-973 |
| | : | (C.P.C. No. 17CV-5860) |
| v. | : | (REGULAR CALENDAR) |
| Kimberly F. Payne, | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 30, 2020

**On brief**: *Reimer Law Co.*, and *Evana Carolyn Delon*, for appellee. **Argued**: *Justin Harriss Homes* (pro hac vice).

**On brief**: *DannLaw*, *Marc E. Dann*, and *Emily White*, for appellant. **Argued**: *Emily White*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Kimberly F. Payne, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas in which the court granted judgment in favor of plaintiff-appellee, National Collegiate Student Loan Trust-1 ("National Collegiate").

{¶ 2} On November 1, 2002, appellant, who is an Ohio resident, applied for a student loan with Bank One, N.A., to attend Capital University in Columbus, Ohio. Appellant signed a promissory note, and on November 26, 2002, the loan was disbursed. Until default, the loan was serviced by American Education Services ("AES"), which is

located in Pennsylvania. On February 19, 2003, National Collegiate, a Delaware Statutory Trust, acquired the loan while the loan was in deferment.

{¶ 3} The loan entered repayment status in October 2007, and regular payments were made until 2012, excluding five periods of temporary deferment/forbearance. On September 3, 2012, the last regular payment was received. The account was charged off November 1, 2012, however, after the loan was charged off, or designated as unrecoverable,[1] several post-default payments were applied toward interest. After default, the loan was sent to a collection agency for two years in an attempt to collect the loan. Transworld Systems, Inc. ("Transworld"), became the default servicer and custodian of records on November 3, 2014.[2]

{¶ 4} On June 30, 2017, National Collegiate filed the present collection action against appellant. On July 24, 2018, a bench trial was held before a magistrate. James Cummins, an employee of Transworld, testified for National Collegiate. At trial, National Collegiate presented an exhibit entitled "Pool Supplement" to demonstrate it had standing to bring the action in collection. The pool supplement indicated Bank One transferred to National Collegiate every loan described in Schedule 2. Schedule 2 in its entirety was not submitted as evidence but Cummins testified it was an electronic file that he had viewed and testified to its contents. Cummins stated this transfer of loans included approximately 60,000 loans, including the loan in question.

{¶ 5} On August 22, 2018, the magistrate entered judgment in favor of National Collegiate in the amount of $28,721.86, with post-judgment interest plus court costs. Appellant filed objections. On December 4, 2018, the trial court issued a judgment overruling appellant's objections. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

> [I.] THE TRIAL COURT ERRED IN HOLDING THAT THIS ACTION WAS NOT TIME BARRED[.]
>
> [II.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO DEMONSTRATE STANDING AND THE JUDGMENT IN APPELLEE'S FAVOR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

---

[1] *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶ 3.
[2] On November 3, 2014, Transworld purchased this business unit from NCO Financial Services, who was the previous default servicer and custodian of records.

[III.] THE TRIAL COURT ERRED IN ADMITTING AND RELYING UPON UNAUTHENTICATED HEARSAY EVIDENCE[.]

{¶ 6} Appellant argues in her first assignment of error the trial court erred when it found that the present action was not time barred. Appellant argues the cause of action accrued in Pennsylvania because the payments were made to AES, which is located in Pennsylvania, and the action is time barred under the Pennsylvania statute of limitations. National Collegiate argues that Ohio law applies, and the action is not time barred under Ohio law.

{¶ 7} The present case involves the applicability of the statute of limitations. With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. *Doe v. Vineyard Columbus*, 10th Dist. No. 13AP-599, 2014-Ohio-2617, ¶ 13. In this case, we must determine where the cause of action accrued—Ohio or Pennsylvania and, thus, which statute of limitations applies under these facts.

{¶ 8} Appellant defaulted on her loan in November 2012, and the collection action was filed on June 30, 2017. Ohio has an eight-year statute of limitations for actions to enforce a written contract, pursuant to R.C. 2305.06; thus, if the cause of action accrued in Ohio, the collection action was brought within the statute of limitations. Pennsylvania has a four-year statute of limitations, pursuant to 42 Pa.Cons.Stat.Ann. 5525; thus, if the cause of action accrued in Pennsylvania, the collection action was not brought within the statute of limitations. Appellant argues that because the cause of action in the present case accrued in Pennsylvania, the action was barred by the Pennsylvania statute of limitations.

{¶ 9} Pursuant R.C. 2305.03(B), the borrowing statute, Ohio applies the statute of limitations of the state where the cause of action accrued in instances when that state's statute of limitations is shorter. R.C. 2305.03(B) provides: "No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired."

{¶ 10} Appellant relies upon *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶ 37, in which the Supreme Court of Ohio stated:

> But Ohio has a borrowing statute, which is a legislative exception to the general rule that a forum state always applies its own statute-of-limitations law. *Combs v. Internatl. Ins. Co.*, 354 F.3d 568, 578 (6th Cir.2004). In essence, a borrowing statute directs a forum court to "borrow" the limitation period of another state if the cause of action accrued in that foreign state and that state's limitation period is shorter than the forum state's limitation period. *Dudek* [*v. Thomas & Thomas Attorneys & Counselors at Law, L.L.C.*, 702 F.Supp.2d 826, 833 (N.D.Ohio 2010)] at 835, citing *Combs* at 578, and *CMACO Automotive Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 244 (6th Cir.2009).

{¶ 11} In *Taylor*, the defendant defaulted on a credit card debt. The bank sold the debt to a third-party entity who, in turn, sold the debt again. A collection attorney filed suit against the defendant seeking the amount due plus interest. The defendant alleged the action was time barred because the claims accrued in Delaware, through operation of Ohio's borrowing statute. Further, the defendant counterclaimed and alleged violations of the Federal Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act by entities that purchased her debt and were involved in suing her to collect the debt. The parties failed to enter the written credit card agreement into evidence so there was no written contract. The borrower was located in Ohio, the home state of the bank that issued the credit card was Delaware, and the payments were made in Delaware. The court determined that the underlying cause of action for default on the credit card accrued in Delaware and through Ohio's borrowing statute, Delaware's statute of limitations determined whether the action was timely filed.

{¶ 12} Appellant argues the *Taylor* court only relied upon the place where the payments were made, Delaware, as the factor to determine where the cause of action accrued. However, the *Taylor* court relied upon two factors, at ¶ 1, as follows:

> We hold that the underlying cause of action for default on the credit card in this case accrued in Delaware, the home state of the bank that issued the credit card and where the consumer's payments were made, and that Delaware's statute of limitations—through operation of Ohio's borrowing statute— determines whether the collection action was timely filed.

{¶ 13} Thus, the *Taylor* court relied on the home state of the bank and the place where the payments were made to determine where the cause of action accrued. The magistrate in this case distinguished *Taylor*, finding *Taylor* involved a different type of debt. Additionally, there was no written contract in *Taylor*, and here, there was a written contract which specified Ohio law would be followed.

{¶ 14} The Supreme Court has used the "most significant relationship" test enunciated in the Restatement of Law 2d, Conflict of Laws to determine the choice of law. In *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436 (1983), the Supreme Court reiterated the general rule that the law of the state where the contract is to be performed governs on the theory that the place of performance bears the most significant relationship to the contract. *Id.* at 438. In considering whether to apply the law of the state chosen by the parties in their contract, the *Schulke* court held that the contractual choice of law provision would govern "unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Id.* at syllabus.

{¶ 15} Thus, with limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. *Id.* at 438-39. In *Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284 (1984), minority shareholders in Cleveland Browns, Inc., a Delaware corporation, filed an action in Ohio seeking specific performance of a voting agreement that they had executed with the majority shareholder. The parties to the voting agreement had not chosen a particular forum's law. In order to resolve the choice-of-law issue, the court examined the factors provided in 1 Restatement of the Law 2d, Conflict of Laws, Section 188 (1971). The court expressly adopted the rules in 1 Restatement of the Law 2d, Conflict of Laws, Sections 187-88 (1971) in the syllabus of *Gries*.

{¶ 16} To resolve the choice-of-law issue, the *Gries* court examined the factors in Section 188 of the Restatement, which provides that, in the absence of an effective choice of law by the parties, the parties' rights and duties under the contract are determined by the law of the state that, with respect to that issue, has "the most significant relationship to the

transaction and the parties."  Restatement at 575, Section 188(1).  To assist in making this determination, Section 188(2)(a) through (d) provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties.

{¶ 17}  Here, the parties had a written contract that specified Ohio law governed the provisions of the loan.   In exhibit 1, page 3, the Loan Application/Promissory Note, contained the following language:

> L.  Additional Agreements:
>
> 1. I understand that you are located in OHIO and that this Application/Promissory Note will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS APPLICATION/PROMISSORY NOTE WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

(Emphasis sic.)

{¶ 18}  Exhibit 1 also demonstrates appellant lived in Grove City, Ohio, and the loan was to enable appellant to pay fees at Capital University, located in Ohio, and the loan originated from Bank One, whose home state is Ohio.

{¶ 19}  Applying those principles to this case, not only is Ohio law specified in the contract, we recognize that Ohio "bears the most significant relationship to the contract." *Schulke* at 438.  The lender was an Ohio bank, the borrower was an Ohio resident, place of contracting was Ohio, the location of the subject matter of the contract was Ohio, and the loan was for the borrower to attend an Ohio university.  Ohio is the state where the cause of action accrued, and the action was filed timely within Ohio's statute of limitations. Appellant's first assignment of error is overruled.

{¶ 20}  Appellant argues in her second assignment of error the evidence presented at trial was insufficient to demonstrate standing and the judgment in National Collegiate's favor was against the manifest weight of the evidence.

{¶ 21}  When reviewing a sufficiency of the evidence argument, the standard of review in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict.  *Hartford Cas. Ins. Co. v. Easley*, 90 Ohio

App.3d 525, 531 (10th Dist.1993). Thus, this court must determine if appellant was entitled to judgment as a matter of law when the evidence is construed most strongly in favor of National Collegiate. *Id.* "In other words, is the verdict one which could reasonably be reached from the evidence?" *Id.* at 530, citing Civ.R. 50(B) and *Cataland v. Cahill*, 13 Ohio App.3d 113 (10th Dist.1984).

{¶ 22} In *Osgood v. Dzikowski*, 10th Dist. No. 08AP-105, 2008-Ohio-5065, ¶ 15, this court set forth the standard of review to be applied in civil cases in assessing whether a trial court's judgment is against the manifest weight of the evidence, as follows: "[W]here an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of the record to determine if there is any competent, credible evidence to support the underlying judgment." *Id.*, citing *Lee v. Mendel*, 10th Dist. No. 98AP-1404 (Aug. 24, 1999). " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶ 23} "A trial court's findings of fact are presumed to be correct and will not be reversed as being contrary to the manifest weight of the evidence if there is competent and credible evidence supporting the finding." *Eagle Land Title Agency v. Affiliated Mtge. Co.*, 10th Dist. No. 95APG12-1617 (June 27, 1996), citing *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 355 (1993). *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal* at 80. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. *Id.*

{¶ 24} Appellant argues that National Collegiate did not establish standing to collect a loan that originated with Bank One. National Collegiate acquired appellant's student loan, along with approximately 60,000 other individual loans in February 2003. James Cummins testified regarding National Collegiate's purchase of the loan and the exhibits. Cummins is employed by Transworld, the default loan servicer and custodian of records. Cummins testified he personally reviewed and produced the records.

{¶ 25} Cummins explained the process of how National Collegiate acquired appellant's loan. He testified that lenders who participate in this loan program acquire

loans. After a certain number of loans or a certain value of loans are accumulated then the third-party purchases the loans from the lender or sets them up in a trust. In this case, appellant's loan was part of a purchase of over 60,000 bundled loans that were placed in a trust.

{¶ 26} The exhibits that National Collegiate produced include the loan application/promissory note (Exhibit 1); a document demonstrating that Transworld was the servicer and custodian of the records for the trust as of November 3, 2014 (Exhibit 1-A); the note disclosure statement (Exhibit 2); the pool supplement document, including three pages of information related specifically to appellant's loan edited from Schedule 2 (Exhibit 3); the payment history of the loan (Exhibit 4); a history of the deferments/forbearance (Exhibit 5); a record of the monthly repayment amounts (Exhibit 6); and a report of the loan payment history demonstrating the history of the account after default from November 2012 through June 2018 (Exhibit 7).

{¶ 27} National Collegiate introduced exhibit 3, which is the pool supplement. The specific loans transferred in that pool supplement are identified in an electronic data file referred to in the pool supplement as Schedule 2. National Collegiate provided a redacted, printed excerpt of Schedule 2, created by Cummins, which only contained information related to appellant's loan, excluding information regarding the other 60,000 individual loans in the pool supplement.

{¶ 28} Cummins stated he had viewed the electronic file of Schedule 2 and created the redacted excerpt of Schedule 2 by searching for information related to this loan by the loan number and appellant's social security number. Cummins explained the process of creating the edited Schedule 2. He opened the electronic file titled "master trust," and a list of lenders who had participated in the transfer of loans to the trust. He opened the file for "Bank One" and searched a large spreadsheet by social security number. That resulted in the three-page document that he printed and attached to the pool supplement, exhibit 3. Cummins testified appellant's loan was included in Schedule 2 and transferred to National Collegiate pursuant to the pool supplement.

{¶ 29} The magistrate determined Cummins showed that National Collegiate became the owner of the loan based on the pool supplement, exhibit 3, and that National

Collegiate was the proper party to commence a suit for recovery of the loan. The trial court agreed.

{¶ 30} Appellant contends that exhibit 3, the schedule of loans transferred to the trust in February 2003 was not the genuine schedule of loans referenced in the assignment agreement because it was created more than three years after the transfer occurred. Appellant's argument focuses on exhibit 3 which contains Schedule 2, consisting of three pages. Appellant points to three fields in Schedule 2 that indicate the Schedule 2 provided at trial is not the original Schedule 2. The field entitled "CREATE DATE" indicated a date of May 31, 2005. Further, appellant's name was listed as Kimberly Payne, but the original loan application was completed using her maiden name, Kimberly Clark. Finally, appellant argues the field identifying current principal amount due corresponded with the principal amount due in May 2005, not 2003.

{¶ 31} Cummins testified that Schedule 2 is an electronic file that he accessed and "highlighted and pasted" information that related to appellant's loan which he attached to the end of exhibit 3. (Tr. at 51.) Cummins testified that Bank One created Schedule 2 and as employee of the custodian of records, he has the ability to access the information, but he cannot modify it.

{¶ 32} Appellant's counsel cross-examined Cummins regarding these fields that she alleged are discrepancies that call into question the veracity of the document. When Cummins was asked about the field, "CREATE DATE," he responded he did not know what the field meant. (Tr. at 53.) Appellant did not demonstrate or explain the relevance or impact of the information. Further, appellant's counsel asked Cummins when appellant had changed her name. Cummins replied appellant must have notified the lender, or the loan servicer of her name change because the information he gathered was determined by using her social security number and the loan number, not her name. Appellant provided no evidence as to when she changed her name. Finally, appellant contends that field identifying current principal amount due corresponded with the principal amount due in May 2005, not 2003. At the time the loan was disbursed on November 26, 2002, the principal balance was $21,390.37, including a loan origination fee. The pool supplement was dated February 2003 and the "CURPRIN" field corresponding to the current principal listed the principal balance as $24,618.82. (Tr. at 55.) Cummins stated that was an accurate

number for the principal balance for a loan that was disbursed a few months earlier. Appellant did not provide evidence demonstrating that Cummins' testimony on these fields was inaccurate.

{¶ 33} Appellant did provide two exhibits in an effort to impeach Cummins and challenge his credibility. Appellant's exhibit A is a "Stipulation and Consent to the Issuance of a Consent Order" from the United States Consumer Financial Protection Bureau, signed by the Chief Executive Officer of Transworld. Exhibit B is a "Consent Order" from the United States Consumer Financial Protection Bureau. The document was signed on September 14, 2017. In the consent entry, although Transworld did not admit to any negative conduct, the consent order acknowledged that Transworld, while collecting loans on behalf of National Collegiate, filed affidavits that falsely claimed personal knowledge of account records and consumer debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. The consent order also acknowledged that some lawsuits were filed outside the statute of limitations. The time period involved in the consent order involved lawsuits filed between November 1, 2014 and April 25, 2016, and this case was not filed until June 30, 2017.

{¶ 34} The magistrate considered the evidence and found Cummins' testimony credible. Such determinations are for the trier of fact. In *Ettayem v. Land of Ararat Invest. Group, Inc.*, 10th Dist. No. 19AP-427, 2020-Ohio-3006, ¶ 18, this court recognized that "[a]n appellate court must give deference to the credibility findings of the trial court because the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*, citing *Seasons Coal* at 80. "Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact." *Id.,* citing *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36.

{¶ 35} Appellant relies upon *Natl. Collegiate Student Loan Trust 2003-1 v. Beverly*, 6th Dist. No. H-13-010, 2014-Ohio-4346; *NTL Collegiate Student Loan Trust 2005-1 v. Owusu*, 12th Dist. No. CA2015-07-139, 2016-Ohio-259, and *Natl. Collegiate Student Loan Trust v. Hair*, 7th Dist. No. 13 MA 8, 2015-Ohio-832, for the proposition that National Collegiate Student Loan Trust ("NCSLT") did not include specific documentation to link the

pool of debts assigned to NCSLT from the bank to the actual debt defaulted upon. However, those cases are distinguishable from these facts.

{¶ 36} In *Beverly*, the court held the trust did not establish standing because the complaints only attached the promissory notes for the student loans which identified the bank as providing the loan and did not assert that the trust had an interest by assignment or other means. The plaintiff had failed to establish standing by failing to attach any document that demonstrated assignment of the loan to it.

{¶ 37} In *Owusu*, the appellate court found the trial court had erred in granting plaintiff summary judgment because the plaintiff neglected to include documentation to prove the direct link showing Owusu's debt was included in the pool of debts assigned to plaintiff, as well as documentation of the terms and conditions of the loan and default.

{¶ 38} In *Hair*, the trial court granted summary judgment without evidence of assignment of the promissory note from Bank One to NCSLT. The trial court only had evidence of the original loan agreement between defendants and the bank. Since there was no evidence supporting the plaintiff's interest in the note at the time of final judgment, the appellate court held the complaint should have been dismissed.

{¶ 39} These cases are factually distinguishable from this case. In all three cases, National Collegiate did not allege an interest in the loans and failed to provide such evidence. Here, however, National Collegiate provided a redacted Schedule 2 to show the specific information related to appellant's loan but did not include evidence regarding the 60,000 other loans provided in the pool supplement. Therefore, Cummins was able to testify about the acquisition of appellant's loan by National Collegiate.

{¶ 40} This case is similar to *Natl. Collegiate Student Loan Trust 2005-3 v. Dunlap*, 4th Dist. No. 17CA3611, 2018-Ohio-2701, in which the Fourth District affirmed the trial court's granting National Collegiate summary judgment because it had demonstrated standing by submitting an affidavit of an employee of the subservicer of the loan, with attached documentation, showing the original lender transferred the loan to another entity, which, in turn, transferred it to National Collegiate before the loan was in default.

{¶ 41} Thus, in this case, the verdict is one that can be reasonably reached from the evidence and there is sufficient evidence to establish National Collegiate's standing. There

is competent, credible evidence going to all the essential elements. Appellant's second assignment of error is overruled.

{¶ 42} Appellant argues in her third assignment of error the trial court erred when it admitted and relied upon unauthenticated hearsay evidence. Appellant argues the trial court erred in admitting exhibit 1 through 3 because National Collegiate did not introduce the original documents and Cummins testified that he had not seen the originals. Appellant contends Evid.R. 1002 requires the production of the original document to prove the contents of a writing and Evid.R. 1004 permits production of a duplicate only if the original has been lost or destroyed, is unobtainable through the judicial process, is in the possession of an opponent, or pertains to a collateral matter. Appellant argues none of these exceptions apply and National Collegiate failed to offer any justification for its failure to produce the original documents.

{¶ 43} "Hearsay is any statement, other than one which is made by the declarant at trial, which is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C)." *HSBC Mtge. Corp. v. Latona*, 10th Dist. No. 15AP-401, 2016-Ohio-3137, ¶ 8. Hearsay is inadmissible unless it falls within an exception provided in the Rules of Evidence. Evid.R. 802. The records in this case constitute an exception to hearsay as records of regularly conducted activity pursuant to Evid.R. 803(6), which provides, as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 44} In this case, appellant contends that Cummins did not have sufficient personal knowledge to authenticate the records. Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides that the testimony of a witness with knowledge, who testified that a matter is what it is claimed to be, conforms with the requirements of Evid.R. 901. "Thus, ' "any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." ' " *Latona* at ¶ 10, quoting *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, ¶ 15 (2d Dist.), quoting Weissenberger's *Ohio Evidence Treatise*, Section 901.2 (2010).

{¶ 45} Cummins testified he is employed by Transworld. Transworld is the custodian of the records. Cummins stated he reviewed and produced the relevant records. He explained that National Collegiate is the dedicated custodian of the records and that the records were made at the time of the events and the records were transferred to Transworld. Finally, he testified that the creation and holding of the records was conducted in the ordinary course of business. Cummins explained how the records were created, stored, how he retrieved them, and made copies of the originals. For example, he explained that when a loan application is received by AES, it is stamped, recorded, and the original is kept in a fireproof vault. When a loan goes into default, AES sends an electronic copy to National Collegiate.

{¶ 46} The trial court reviewed the transcript and determined that Cummins' testimony exhibited his knowledge of the process and of the exhibits which constituted a proper foundation for the admission of the exhibits as business records of regularly conducted activity. We agree. Cummins testified that he made copies of the electronic file containing the originals.

{¶ 47} Appellant also argues National Collegiate had to produce the originals of the exhibits. However, Evid.R. 1003 permits the admission of a duplicate into evidence, as follows: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Evid.R. 1001(4) defines a duplicate,

as follows: "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original. A 'duplicate' includes a counterpart from which personal identifiers have been omitted pursuant to Rule 45 of the Rules of Superintendence for the Courts of Ohio, and which otherwise accurately reproduces the original."

{¶ 48} Appellant argues the original documents had to be provided and the duplicates were inadmissible because Cummins was required to have seen the originals. In *Latona*, this court cited multiple authorities stating that the testimony of the bank's loan servicing agent provides a sufficient foundation for the admissibility of the relevant loan documents as business records under Evid.R. 803(6). *Latona* at ¶ 12, citing *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 39; *Fifth Third Mtge. Co. v. Bell*, 12th Dist. No. CA2013-Ohio-02-003, 2013-Ohio-3678, ¶ 28; *U.S. Bank, N.A. v. Martin*, 7th Dist. No. 13 MA 107, 2014-Ohio-3874, ¶ 34; *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 19, citing *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, ¶ 40.

{¶ 49} Appellant relies upon *State v. Skimmerhorn*, 162 Ohio App.3d 762, 2005-Ohio-4300 (1st. Dist.), for the proposition that a duplicate document is not admissible at trial where the original was not produced and the witness who attempted to authenticate the document as a duplicate had never seen the original. However, the *Skimmerhorn* court analyzed the admissibility of public records under Evid.R. 1005, which is not at issue here.

{¶ 50} A party seeking to exclude a duplicate from evidence has the burden of demonstrating that the duplicate should not be admitted. *Latona* at ¶ 11, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 160 (2001). "The party seeking to exclude a duplicate cannot rely on mere speculation as to its authenticity." *Id.* The trial court's decision to accept duplicates rather than originals is a matter for its discretion. *Id.* An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Yet, "we note that no court has the authority, within its discretion, to commit an error of law." *State v. Chandler*, 10th Dist. No. 13AP-

452, 2013-Ohio-4671, ¶ 8. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore* at 219.

{¶ 51} Here, appellant's only objection to the exhibits is that they are not the originals. Appellant did not raise a specific issue regarding their authenticity. There was no demonstration that it was improper to accept the duplicates in lieu of the originals. We do not find the trial court abused its discretion. Thus, we find that Cummins properly authenticated the copies of the business records admitted at trial. Appellant's third assignment of error is overruled.

{¶ 52} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, P.J., and BEATTY BLUNT, J., concur.

_____