[Cite as *Sutherland v. Gaylor*, 2021-Ohio-1941.]

IN THE TRIAL COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Craig Sutherland et al.,                    :

      Plaintiffs-Appellees/              :
      Cross-Appellants,

                          :            No. 20AP-257
v.                                                                  (C.P.C. No. 18CV-4088)

                          :
Jason Gaylor,                                            (REGULAR CALENDAR)

                          :

      Defendant-Appellant/
      Cross-Appellee.                     :


D E C I S I O N

Rendered on June 8, 2021


**On brief:** *Murray Murphy Moul + Basil LLP, Joseph F. Murray*, and *Jonathan P. Misny*, for appellee/cross-appellant Craig Sutherland. **Argued:** *Jonathan P. Misny*.

**On brief:** *Gordon Bibart LLC, John P. Gordon*, and *Susan L. Strayer*, for appellant/cross-appellee Jason Gaylor. **Argued:** *John P. Gordon*.


APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant/cross-appellee, Jason Gaylor ("Gaylor"), appeals from a judgment of the Franklin County Court of Common Pleas awarding damages to plaintiff-appellee/cross-appellant, Craig Sutherland ("Sutherland"), on his breach of contract claim. Sutherland's cross-appeal challenges the adequacy of the damages awarded. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Sutherland is a registered investment advisor.  In 1994, Sutherland entered into a franchise agreement with Money Concepts International ("Money Concepts"), a company that provides financial planning and wealth management services.  Pursuant to the franchise agreement, Sutherland operates a Money Concepts Financial Planning Center, and he runs the business under the fictitious name of Sutherland Wealth Partners. The franchise agreement permits Sutherland to market and sell financial products and services in Columbus, Ohio through Money Concepts International.  (Pl.'s Ex. 1 at 2.)  Under the terms of the franchise agreement, Sutherland receives commission income from Money Concepts pursuant to a specified schedule for the financial services he sells.  Article IV of the franchise agreement provides that "[c]ompensation rights shall vest in [Sutherland] and coded representatives."  (Pl.'s Ex. 1 at 5.)  Article III, paragraph 5 of the franchise agreement provides that Sutherland "shall not *either voluntarily or by operation of law*, assign * * * this Agreement or any right or interest thereunder without first obtaining the written consent."  (Emphasis added.)  (Pl.'s Ex. 1 at 4.)

{¶ 3}   In 1999, Sutherland founded Conceptual Solutions, Ltd., an Ohio limited liability company.  Sutherland is the sole member of Conceptual Solutions.  According to Sutherland, he founded Conceptual Solutions on the advice of his accountant for the purpose of distributing the commission income he received from Money Concepts and reporting income to the Internal Revenue Service ("IRS").  Sutherland testified he deposits the commission income he receives from Money Concepts with Conceptual Solutions, and Conceptual Solutions pays all business expenses and provides him with a salary.[1]

{¶ 4}   On February 12, 2009, Sutherland entered into an "Agreement of Association" with Gaylor, who was also a registered investment advisor.  (Pl.'s Ex. 2.)  The Agreement of Association authorizes Gaylor to sell Money Concepts' products to investors as an independent contractor of Sutherland under Sutherland's franchise agreement with Money Concepts.  The parties to the Agreement of Association are set out in the first paragraph as follows: "This agreement is made and entered into as of this 12[th] day of February, 2009 (the "Effective Date"), by and between Craig Sutherland, a Money Concepts

---

[1] The record does not contain Conceptual Solutions' Articles of Organization or Operating Agreement.

Financial Planning Center (hereinafter "Financial Center President") * * * and Jason Gaylor (hereinafter "Representative")."  (Pl.'s Ex. 2 at 1.)  Conceptual Solutions is not a party to the Agreement of Association.

{¶ 5}  The Agreement of Association contains the following "non-solicitation" provision:

> XVII.  Termination
>
> * * *
>
> (f) Representative agrees that for the two (2) year period immediately following the termination of this Agreement, Representative shall not for any reason directly or indirectly, by any means or device whatsoever, for himself/herself or on behalf of or in conjunction with any person, partnership, corporation or association, market to, sell to, or solicit for the purpose of selling to or marketing any financial services products to any persons or entities who were clients of Financial Center President, MCC or MCI at any time during the term of this Agreement.

(Pl.'s Ex. 2 at 4.)

{¶ 6}  Gaylor voluntarily terminated his business relationship with Sutherland on September 30, 2016 and began working for a competitor, Cardinal Wealth Partners.  In October 2016, Sutherland, by and through legal counsel, sent Gaylor correspondence reminding him of his obligations under the non-solicitation provision in the Agreement of Association and demanding that he cease and desist soliciting Money Concepts' clients.  On May 15, 2018, plaintiffs, Sutherland and Conceptual Solutions, filed this lawsuit against defendant Gaylor and defendant Ashley Coury, an employee of Conceptual Solutions.  On August 9, 2018, the trial court issued a decision dismissing all claims against Coury.  Sutherland and Conceptual Solutions appealed the decision to this court.  On October 12, 2018, we dismissed the appeal, sua sponte, for lack of a final, appealable order.  The August 9, 2018 judgment is not the subject of this appeal.

{¶ 7}  In the remaining count of Sutherland's complaint, Sutherland alleges that Gaylor breached the non-solicitation provision in the Agreement of Association. Conceptual Solutions is not identified as a party plaintiff to the claim against Gaylor.  On February 19, 2019, Sutherland moved the trial court for partial summary judgment as to the enforceability of the non-solicitation provision.  Gaylor filed a cross-motion for

summary judgment on the breach of contract claim. Therein, Gaylor argued, among other things, Sutherland could not recover damages for Gaylor's breach of the non-solicitation provisions in the Agreement of Association because any lost profits arising from the breach belonged to Conceptual Solutions, not Sutherland. Gaylor did not, however, move the trial court to join or substitute Conceptual Solutions as a party plaintiff to the breach of contract claim.

{¶ 8} On April 30, 2019, the trial court ruled that Gaylor breached the Agreement of Association by soliciting clients of the franchise within the two-year period immediately following termination of the Agreement of Association on September 30, 2016. The trial court nevertheless determined that an issue of fact existed whether the non-solicitation provision of the Agreement of Association was enforceable as a reasonable restriction on Gaylor's trade or business.[2]

{¶ 9} The issues of damages and the reasonableness of the non-solicitation provision in the Agreement of Association were tried to the court on August 26 and 27, 2019. On April 9, 2020, the trial court issued a written decision on the breach of contract claim. The trial court concluded the non-solicitation provision in the Agreement of Association was legally enforceable; a ruling that is not challenged in this appeal. In so ruling, the court also found as follows:

> The competent and credible evidence establishes that Gaylor serviced 120 accounts. Upon terminating his association with Su[th]erland, 100 of those clients went with Gaylor, 6 stayed with Su[th]erland, and the remainder went elsewhere. This means Gaylor wrongfully took 83.33% of the accounts. The Court finds that it is reasonable that Su[th]erland would have retained this client base. Su[th]erland credibly testified that he has a high retention rate. Additionally, if Gaylor had not wrongfully solicited these clients, their accounts would have automatically reverted to and been serviced by Su[th]erland with no disruption to them. Thus, the Court finds the

---

[2] The trial court decision also contains the following ruling: "The final issue to be resolved is Defendant's request for summary judgment on the grounds that Plaintiff cannot establish damages. The Court has reviewed the parties' competing arguments. Neither party has convinced the Court as to his position as a matter of law. As argued by Defendant, the measure of damages is generally 'lost profits,' which would be reported by Conceptual Solutions, Ltd. However, Plaintiff argues that <u>he</u> was paid by MCC, and thus, he can trace his lost revenue and prove that he incurred damages. In construing the evidence in Plaintiff's favor, the Court will **DENY** Defendant's request for summary judgment on this issue." (Emphasis sic.)

competent and credible evidence establishes lost profits per year of $111,111.50 ($133,339.13 x 83.33%).

* * *

Accordingly, the Court finds that the business would have made an additional $111, 111.50 per year—or $222,223.00 for the 2-year period—in profits but for Gaylor's violation of the non-compete provision.

(Decision at 11-12.)

{¶ 10} The trial court did not award Sutherland damages equal to the profits lost as a result of Gaylor's breach. Rather, the trial court awarded damages to Sutherland in the total amount of $97,778.12, representing the estimated additional salary Sutherland would have received from Conceptual Solutions had Gaylor not violated the non-solicitation provision in the Agreement of Association.[3] Thus, a significant portion of the damages recoverable as a result of Gaylor's breach were not awarded by the trial court.

{¶ 11} Gaylor timely appealed to this court from the April 9, 2020 judgment. Sutherland filed a cross-appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant Gaylor assigns the following as trial court error:

1. The trial court erred as a matter of law by awarding Sutherland damages based upon loss of income from Conceptual Solutions without sufficient evidence to support its verdict.

2. The trial court erred as a matter of law in calculating the income Conceptual Solutions presumably lost as a result of Gaylor's competition over a 24[-]month period when there was insufficient evidence to determine when Appellant lost his customers and thus the period during which he incurred damages.

3. The trial court abused its discretion by entering a verdict in favor of Sutherland having found that Sutherland had not carried his burden to prove damages with reasonable certainty.

{¶ 13} Appellee/cross-appellant Sutherland assigns the following as trial court error:

---

[3] The trial court determined, based on the tax returns of Conceptual Solutions and Sutherland, Conceptual Solutions payed Sutherland a salary roughly equal to 44 percent of total business income.

> The trial court erred in weighing the evidence that Money Concepts paid Sutherland his commission income directly.

## III. LEGAL ANALYSIS

### A. Gaylor's Third Assignment of Error and Sutherland's Cross-Assignment of Error

{¶ 14} Gaylor's third assignment of error and Sutherland's cross-assignment of error raise the same threshold legal issue. Because those assignments of error are largely dispositive of this appeal, we will consider them together.

{¶ 15} " 'It has been consistently held in Ohio that in a breach of a covenant not to compete, the usual measure of damages is lost profits.' " *Ginn v. Stonecreek Dental Care*, 12th Dist. No. CA2015-01-001, 2015-Ohio-4452, ¶ 18, quoting *Briggs v. GLA Water Mgt.*, 6th Dist. No. WD-12-062, 2014-Ohio-1551, ¶ 30. Gaylor contends the proper measure of damages in this case is an award of lost profit that would place the non-breaching party in the same position that party would have enjoyed had Gaylor not breached the Agreement of Association. Sutherland argues the true measure of damages is the gross commissions he receives from Money Concepts. The trial court determined the total damages flowing naturally from Gaylor's breach of the Agreement of Association was $222,223, regardless of whether it is considered lost profit or lost commission income. The parties disagree in this case whether Sutherland is the proper party to prosecute the claim against Gaylor and recover $222,223 in damages.

{¶ 16} The trial court, in awarding damages to Sutherland, essentially split the breach of contract claim into two parts: Sutherland's lost salary and Conceptual Solutions' lost business income. The trial court decision provides, in relevant part, as follows:

> Next, the Court will address the major point of dispute in this litigation. Who is the real party in interest as to any damages stemming from Gaylor's breach of contract? As advanced by Gaylor, the measure of damages for violation of a non-compete provision is generally "lost profits." Because the business income is reported by Conceptual Solutions, Gaylor contends that Su[th]erland is not the real party in interest as to any damages.
>
> * * *
>
> It is Su[th]erland's position that he is in fact directly compensated by Money Concepts, and how he chooses to

> disburse the money thereafter for tax purposes is of no consequence.
>
> After careful consideration of the evidence, the Court finds that Su[th]erland did not substantiate that he is paid directly by Money Concepts and then disburses the money to Conceptual Solutions. He did not produce any documentary proof, such as the 1099's, to support his testimony. The competent evidence, as evidenced by Conceptual Solutions' tax records, is that the business income belongs to Conceptual Solutions. * * *
>
> Based on this finding, Gaylor's position is that any loss was sustained by Conceptual Solutions and not Su[th]erland. * * *
>
> While the Court agrees that Su[th]erland seeks to recover damages sustained by Conceptual Solutions, it would be a fallacy to say that he did not himself sustain a loss. The credible evidence establishes that Su[th]erland was compensated in the form of a salary paid by Conceptual Solutions.

(Decision at 7-8.)

{¶ 17} Relying on the real party in interest rule under Civ.R. 17(A), the trial court limited Sutherland's damage award to the additional salary Sutherland would have earned from Conceptual Solutions had Gaylor not breached the Agreement of Association.[4] In Sutherland's cross-assignment of error, he argues the trial court erred when it limited his recovery because he is the contracting party, not Conceptual Solutions, and all damages flowing from the breach belong to him, not Conceptual Solutions. In Gaylor's third assignment of error, he argues that the right to lost profits arising from his breach of the Agreement of Association belonged solely to Conceptual Solutions, the limited liability company that operates Sutherland's Money Concepts franchise. Gaylor claims that Sutherland has not proven he personally suffered an injury as a result of Gaylor's breach of the Agreement of Association.

{¶ 18} In our view, the competing arguments of the parties raise the question whether Sutherland or Conceptual Solutions has standing to assert a claim for the breach

---

[4] In the trial court, Gaylor argued that Sutherland should be estopped from disregarding Conceptual Solutions' separate corporate identity in order to prosecute a claim for lost profit in his individual capacity. (Gaylor's Feb. 19, 2019 Mot. for Summ. Jgmt. at 8-12; Gaylor's Mar. 12, 2019 Memo. in Opp. to Sutherland's Mot. for Summ. Jgmt. at 6.) Thus, the issue of Sutherland's standing to sue was raised in the trial court.

of the Agreement of Association. In order for a plaintiff to establish standing, the plaintiff must show he suffered: (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. "[F]or purposes of appellate review, a question involving standing is typically a question of law and, as such, it is to be reviewed de novo." *Wilkins v. Harrisburg*, 10th Dist. No. 14AP-1028, 2015-Ohio-5472, ¶ 7, citing *LULAC v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 23, citing *Ohio Concrete Constr. Assn. v. Ohio Dept. of Transp.*, 10th Dist. No. 08AP-905, 2009-Ohio-2400, ¶ 9. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 21-22. Accordingly, Ohio courts have held that "[b]ecause standing is jurisdictional, it cannot be waived." *Orum Stair, LLC v. GJJG Ents., LLC*, 10th Dist. No. 15AP-507, 2016-Ohio-7064, ¶ 50 (Luper Schuster, J., concurs in part, dissents in part), citing *Gildner v. Accenture, L.L.P.*, 10th Dist. No. 09AP-167, 2009-Ohio-5335, ¶ 9. A lack of standing cannot be cured by use of Civ.R. 17 or the joinder rules. *BAC Home Loans Servicing LP v. Busby*, 2d Dist. No.25510, 2013-Ohio-1919.

{¶ 19} "Common-law standing is similar to Civ.R. 17(A)'s real-party-in-interest requirement." *Abroms v. Synergy Bldg. Sys.*, 2d Dist. No. 23944, 2011-Ohio-2180, ¶ 46. While the real-party-in-interest rule under Civ.R. 17(A) concerns proper party joinder, it does not address standing. *Schwartzwald* at ¶ 33, citing *Lincoln Property Co. v. Roche*, 546 U.S. 81, 90 (2005). "Indeed, one who has standing by possessing a 'personal stake' in a lawsuit undoubtedly also has a 'real interest in the subject matter of the litigation.' " *Abroms* at ¶ 46. "Thus, courts often conflate common-law standing and Civ.R. 17, treating them as one and the same." *Id.*, citing *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77 (1998) ("Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action.").

{¶ 20} With regard to common-law claims for breach of contract, "[i]t is generally recognized that a contract is binding only upon the parties to that contract." *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 275 (1994); *Cleveland Window Glass & Door Co. v. Natl. Surety Co.*, 118 Ohio St. 414 (1928). Accordingly, only a party to the contract or an intended third-party beneficiary has enforceable rights thereunder; an incidental third-party beneficiary does not. *TRINOVA Corp.* at 277; *Torrance v. Rom*, 8th

Dist. No. 108818, 2020-Ohio-3971, ¶ 23; *Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161.  *See also Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. No. 12AP-977, 2013-Ohio-3700, ¶ 29 ("Because appellant is neither a party to nor an intended third-party beneficiary of the 2010 annuity, he lacks standing to pursue his breach of contract claim."); *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, ¶ 25 (3d Dist.) (only the contracting party has standing to seek rescission based on breach of contract).  Conversely, "a party who fortuitously receives some benefit from the performance of a contractual promise is an incidental, and not an intended, third-party beneficiary." *Prince v. Kent State Univ.*, 10th Dist. No. 11AP-493, (Mar. 13, 2012), citing *TRINOVA Corp.* at 278; *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988).

{¶ 21}  On the other hand, a real party in interest has been defined as " '* * * one who has real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.' " *Cent. Mtge. Co. v. Webster*, 5th Dist. No. 2011CA00242, 2012-Ohio-4478, ¶ 26, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24 (1985).  "The purpose behind the real party in interest rule is '* * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter.' " *Schwartzwald*, 2012-Ohio-5017, at ¶ 32, quoting *Celanese Corp. of Am. v. John Clark Industries*, 214 F.2d 551, 556 (5th Cir.1954).

{¶ 22}  Here, the trial court found Sutherland sustained a compensable injury as a result of Gaylor's breach of the Agreement of Association but only compensated him for his lost salary.  The trial court also found Conceptual Solutions was the real party in interest for purposes of lost profit.  Our review of the evidence in the record reveals Sutherland is the only party with standing to sue Gaylor for breach of the Agreement of Association, and Sutherland, not Conceptual Solutions, is the real party in interest.

{¶ 23}  Conceptual Solutions is not a party to the 2009 Agreement of Association between Sutherland and Gaylor, and there is no mention of Conceptual Solutions in that agreement.  The language in the Agreement of Association prohibits unilateral assignment, and there was no evidence produced at trial to support a finding that Sutherland assigned

his rights under the Agreement of Association to Conceptual Solutions.  In his third assignment of error, Gaylor contends that "[b]ecause Gaylor was not prohibited from competing with Conceptual Solutions, Conceptual Solutions could not be legally damaged by [Gaylor's] competition."  (Gaylor's Brief at 26.)  Yet Gaylor also argues in his third assignment of error that any profits lost as a result of his breach of the Agreement of Association belong to Conceptual Solutions.

{¶ 24} We find Gaylor's position untenable.  Were we to accept the argument Gaylor makes in his third assignment of error, Sutherland would not have standing to prosecute an action against Gaylor for breach of the Agreement of Association because he operates his business as a limited liability company, and Conceptual Solutions would not have standing to prosecute an action for breach of contract against Gaylor because Conceptual Solutions is not a party to the Agreement of Association.  Under Ohio law, however, a contracting party has standing to prosecute an action for breach of contract.  Because Sutherland, not Conceptual Solutions, is the contracting party, Sutherland, not Conceptual Solutions, is the party with standing to bring the action against Gaylor for breach of the Agreement of Association.

{¶ 25} The claim for breach of contract asserted by Sutherland against Gaylor represents a single, indivisible claim for relief in contract, and Sutherland, as the contracting party, is the only party with standing to assert that claim.  Because the undisputed evidence in the record shows that Sutherland was the only party with standing to prosecute a claim for breach of the Agreement of Association, Sutherland is also the real party in interest.  *Abroms*, 2011-Ohio-2180, at ¶ 46; *Schwartzwald*, 2012-Ohio-5017, at ¶ 36.  Had Sutherland assigned his rights under the Agreement of Association to Conceptual Solutions, at any time prior to the commencement of this action, Conceptual Solutions would be the party with standing to sue Gaylor for breach of contract, not Sutherland.[5]

---

[5] Because a limited liability company is distinct from its members, an individual member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company.  *TD Ltd., LLC v. Dudley*, 12th Dist. No. CA2014-01-009, 2014-Ohio-3996, ¶ 16, fn. 2.  "The general rule is applicable in cases where the individual is the sole stockholder." (Citation omitted.)  *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 603 (6th Cir.1988).  *See also Sobh v. Am. Family Ins. Co.*, 755 F.Supp.2d 852, 856 (N.D.Ohio 2010) (applying Ohio law finding sole member of limited liability company lacked standing to bring breach of contract action in his individual capacity on behalf of the company).  "The lack of standing may require a court to dismiss an action."  *Torrance*, 2020-Ohio-3971, at ¶ 23, citing *Thies v. Wheelock*, 2d Dist. No. 2017-CA-8, 2017-Ohio-8605, ¶ 10.

Because Conceptual Solutions has no enforceable rights under the Agreement of Association, Conceptual Solutions has no standing to assert a claim against Gaylor for breach of the Agreement of Association or to recover damages as a result of Gaylor's breach. Absent standing to sue, Conceptual Solutions cannot be the real party in interest. *Abroms* at ¶ 46; *Schwartzwald* at ¶ 36.

{¶ 26} It is Gaylor's contention in his third assignment of error that Sutherland's failure to produce IRS Form 1099 precluded him from recovering damages in the form of lost profit. Sutherland counters in his cross-assignment of error that he produced sufficient evidence to support a finding by the trial court that he was paid directly by Money Concepts, even though he did not produce Form 1099. We agree with Sutherland.

{¶ 27} Conceptual Solutions was not in existence in 1994 when Sutherland and Money Concepts executed the franchise agreement. The franchise agreement provides that Sutherland "shall not *either voluntarily or by operation of law*, assign * * * this Agreement or any right or interest thereunder without first obtaining written consent." (Emphasis added.) (Pl.'s Ex. 1 at 4.) There was no evidence produced in the trial court to support a finding that Sutherland assigned his rights under the 1994 franchise agreement to Conceptual Solutions, and there was no evidence in the record to support a finding that Conceptual Solutions was a party, assignee, or intended beneficiary of the 1994 franchise agreement. In our view, the manner in which Sutherland reports his commission income from Money Concepts to the IRS is not probative of his standing to sue Gaylor for the breach of the Agreement of Association and not dispositive of his right to recover damages in the form of lost profits arising from that breach.

{¶ 28} Moreover, Sutherland testified he is paid directly by Money Concepts, and he receives an IRS Form 1099 from Money Concepts. Gaylor also testified he is paid commission income directly from Money Concepts, and he receives a Form 1099 from Money Concepts. (Def.'s Ex. K.) Sutherland submitted numerous commission statements he received from Money Concepts. None of the statements refer to Conceptual Solutions. There is no question that Money Concepts paid compensation directly to Sutherland on execution of the franchise agreement in 1994, as Conceptual Solutions was not yet in existence. Under the franchise agreement, compensation rights vest in Sutherland. (Pl.'s Ex. 1 at 5.) The franchise agreement prohibited unilateral assignment by Sutherland, and

there was no evidence that Sutherland assigned his rights under the franchise agreement to Conceptual Solutions. Under the circumstances, and to the extent it is relevant, the undisputed evidence submitted by Sutherland supports a finding that Sutherland was paid commission income directly from Money Concepts. (Pl.'s Ex. 9.) Sutherland need not produce IRS Form 1099 as corroboration for his testimony. Moreover, the fact that Conceptual Solutions reported Sutherland's commission income from Money Concepts as business income of Conceptual Solutions does not vest Conceptual Solutions with any enforceable rights to that compensation under the franchise agreement.

{¶ 29} Accordingly, we hold the trial court erred by limiting Sutherland's recovery to the additional salary he would have been paid by Conceptual Solutions in the two years following the termination of the Agreement of Association. Because Sutherland was the contracting party, not Conceptual Solutions, any damages arising from Gaylor's breach accrued to Sutherland, whether they be considered gross lost profits or lost commission income. Accordingly, Sutherland's cross-assignment of error is sustained and Gaylor's third assignment of error is overruled. This case shall be remanded for the trial court to award Sutherland damages equal to the gross profits lost as a result of Gaylor's breach. As previously determined by the trial court, the gross amount of Sutherland's lost profit/commission income is $222,223.

### B. Gaylor's Second Assignment of Error

{¶ 30} In Gaylor's second assignment of error, Gaylor contends that insufficient evidence supported an award of damages based on estimated lost profit for the two-year period immediately following Gaylor's termination of the business relationship in September 2016. We disagree.

{¶ 31} "When reviewing a sufficiency of the evidence argument, the standard of review in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict." *Natl. [Collegiate] Student Loan Trust-1 v. Payne*, 10th Dist. No. 18AP-973, 2020-Ohio-3553, ¶ 21, citing *Hartford Cas. Ins. Co. v. Easley*, 90 Ohio App.3d 525, 531 (10th Dist.1993). Appellate courts review such a ruling under the de novo standard. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 23. On review, "we must test whether the evidence, construed most strongly in favor of [the] appellee[], is legally sufficient to sustain

the verdict." *Id.* The question is "whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party." *Easley* at 531, citing Civ.R. 50(B). " 'In other words, is the verdict one which could reasonably be reached from the evidence?' " *Natl. [Collegiate] Student Loan Trust-1* at ¶ 21, quoting *Easley* at 530, citing Civ.R. 50(B) and *Cataland v. Cahill*, 13 Ohio App.3d 113 (10th Dist.1984).

{¶ 32} "It [is] axiomatic in contract law that in determining damages for a breach of contract, the injured party is entitled to compensation to be placed, insofar as can be done by a monetary award, in the same position as that party would have occupied if the contract had been performed." *Briggs*, 2014-Ohio-1551, at ¶ 28. " 'Although a party damaged by the acts of another is entitled to be made whole, the injured party should not receive a windfall; in other words, the damages awarded should not place the injured party in a better position than that party would have enjoyed had the wrongful conduct not occurred.' " *Id.*, quoting *Triangle Properties, Inc. v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 52.

{¶ 33} " 'In order for a plaintiff to recover lost profits in a breach of contract action, the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty.' " *Banks v. Bob Miller Builders, Inc.*, 10th Dist. No. 01AP-582 (2001), quoting *Gahanna v. Eastgate Properties, Inc.*, 36 Ohio St.3d 65 (1988). There must be more than a conclusory statement as to the amount of lost profits. *Kinetico, Inc. v. Indep. Ohio Nail Co.*, 19 Ohio App.3d 26, 30-31 (8th Dist.1984). "An explanation of how that sum was determined is required. Lost profits must be substantiated by calculations based on facts available or in evidence, otherwise they are speculative and uncertain." *Banks*, quoting *Rhodes v. Rhodes*, 71 Ohio App.3d 797, 809 (1991).

{¶ 34} " 'The difficulty of proving lost profits varies greatly with the nature of the transaction.' " (Citation omitted.) *Advanced Travel Nurses, LLC v. Watson*, 2d Dist. No. 24628, 2012-Ohio-3107, ¶ 16, quoting *AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St.3d 177, 181 (1990). " 'If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty. Evidence of past performance will form the basis for a reasonable prediction as

to the future.' " *AGF* at 181, quoting Restatement of the Law 2d, Contracts, Section 352, Comment b (1981).

{¶ 35} "The general rule regarding damages in civil cases is that they must be proven with certainty, but the amount may be reasonably estimated." *Tackle Constr. Group, LLC v. Pedtke Ents.*, 2d Dist. No. 27813, 2018-Ohio-1859, ¶ 22, quoting *TJX Companies, Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 32 (8th Dist.). " ' "Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." ' " *Tackle Constr. Group* at ¶ 22, quoting *TJX Companies* at ¶ 32, quoting *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 559-60 (1941).

{¶ 36} Here, the existence of lost profit is not disputed.[6] The question in this case is the amount of profit lost. As previously noted, the trial court found as follows:

> The competent and credible evidence establishes that Gaylor serviced 120 accounts. Upon terminating his association with Su[th]erland, 100 of those clients went with Gaylor, 6 stayed with Su[th]erland, and the remainder went elsewhere. This means Gaylor wrongfully took 83.33% of the accounts. The Court finds that it is reasonable that Su[th]erland would have retained this client base. Su[th]erland credibly testified that he has a high retention rate. Additionally, if Gaylor had not wrongfully solicited these clients, their accounts would have automatically reverted to and been serviced by Su[th]erland with no disruption to them. Thus, the Court finds the competent and credible evidence establishes lost profits per year of $111,111.50 ($133,339.13 x 83.33%).
>
> * * *
>
> Accordingly, the Court finds that the business would have made an additional $111, 111.50 per year—or $222,223.00 for the 2-year period—in profits but for Gaylor's violation of the non-compete provision.

(Decision at 11-12.)

{¶ 37} The above-cited calculation represents an estimate of gross lost profit for 100 clients over a full 2-year period commencing immediately on Gaylor's severance of the

---

[6] As noted in our ruling on Sutherland's cross-assignment of error and Gaylor's third assignment of error, Gaylor erroneously contends the lost profits belong to Conceptual Solutions, not Gaylor. At trial, Gaylor's counsel also challenged Sutherland's damages estimate because it was based on commission statements from 2014 and may have included commissions earned by other representatives.

parties' business relationship. Gaylor's second assignment of error does not challenge the calculation itself or the accuracy of the underlying data. Rather, Gaylor claims the methodology is flawed because it erroneously assumes Gaylor solicited all 100 clients on the first day the restriction was in place. Gaylor claims a reliable estimate of lost profits required evidence as to the precise date when Gaylor solicited each of the 100 clients at issue and the precise amount of commission income Gaylor derived from each of those clients from the date of solicitation to the end of the 2-year period of restriction in September 2018. We do not believe Ohio law required Sutherland to establish the amount of lost profit with such precision.

{¶ 38} Sutherland's Money Concepts franchise was established in 1994, and it has been operated as a going concern since that time. Gaylor first began operating as an independent contractor under Sutherland's Money Concepts franchise in 2009 when the Agreement of Association was executed, and he continued to perform in that capacity through September 2016 when he severed his relationship with Sutherland. Sutherland produced business records documenting what he believed to be an accurate accounting of Gaylor's commission income from Money Concepts during Gaylor's most recent full year of production. *See* Pl.'s Ex. 8 and 9.

{¶ 39} Sutherland asked the trial court to award damages based on lost profits projected over a two-year period beginning September 2016 and ending September 2018. Because Sutherland's Money Concepts franchise was a well-established business, and because Gaylor had a well-established commission history with the franchise, the amount of lost profit resulting from Gaylor's breach during that period of time could be proved with sufficient certainty, without the need for an expert opinion. In this case, evidence of Gaylor's past performance formed the basis for the trial court to make a reasonable prediction of the profit lost in the two years following the breach.

{¶ 40} The trial court examined Gaylor's most recent commission history preceding the date Gaylor severed his business relationship with Sutherland and used that data to project the commission income Sutherland lost over the two-year period as a result of Gaylor's breach. The trial court found that "the business would have made an additional $111,111.50 per year—or $222,223.00 for the 2-year period—in profits but for Gaylor's

violation of the non-compete provision." (Decision at 12.)  According to the trial court, this lost profit figure represents the gross profit lost in the relevant time period.

{¶ 41}  The trial court expressly rejected the very argument Gaylor now raises in his second assignment of error:

> Gaylor argues that any lost profits should not be calculated for the full 24 months because there is no clear evidence as to when each of the 100 clients left.  However, Su[th]erland seeks damages for only a 2-year period when, based on the nature of the business, he in all likelihood [] would have retained the bulk of the clients beyond this time[]frame and continued to earn commissions from these accounts. Therefore, the Court finds it is fair and reasonable to award damages for the full 24 months being sought by Su[th]erland.

(Decision at 11.)

{¶ 42}  With respect to lost profits, "[t]he general rule is that where profits are lost as the result of a breach of contract, if the profits were in the contemplation of the parties and there is some rational basis shown for determining such profits, they may be recovered as damages." *Excelsior Motor Mfg. & Supply Co. v. Sound Equip., Inc.*, 73 F.2d 725, 728-29 (7th Cir.1934), *cert. denied*, 294 U.S. 706 (1935).  Here, the contract prohibits solicitation of Sutherland's clients for two years.  The evidence shows that Gaylor began soliciting Sutherland's clients, including those exclusively serviced by Sutherland, immediately on termination of Gaylor's business relationship with Sutherland and that he continued to do so throughout the two-year period of restriction.  The trial court ruled the two-year restrictive covenant in the Agreement of Association was lawful, and there has been no challenge to that ruling in this appeal.  In making that ruling, the trial court determined that the non-solitation set forth a reasonable restriction that was necessary to protect Sutherland's legitimate business interests and that the restriction did not impose undue hardship on Gaylor.

{¶ 43}  The trial court found that "in all likelihood," 100 clients Gaylor solicited during the 2-year period covered by the restriction would have been retained by Sutherland. (Decision at 11.)  Those 100 clients would have continued to produce commission income for Sutherland for the foreseeable future, whether Gaylor solicited those clients on day 1 of the 2-year period or the last day.  The trial court found Sutherland testified credibly as to

his client retention rate. Gaylor's second assignment of error does not raise a challenge to the weight of the evidence and the credibility of witnesses, as neither the weight of the evidence nor the credibility of the witnesses is considered in conducting a sufficiency of the evidence review. *Kassay v. Niederst Mgt.*, 8th Dist. No. 106016, 2018-Ohio-2057, ¶ 20, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679 (1998).

{¶ 44} In order for Sutherland to be adequately compensated for his lost profit, Sutherland is entitled to recover estimated lost profit for those clients over a reasonable period of time. The trial court determined the two-year period of restriction was reasonable. Competent, credible evidence supports the trial court's determination. Accordingly, we overrule Gaylor's second assignment of error.

### C. Gaylor's First Assignment of Error

{¶ 45} In Gaylor's first assignment of error, Gaylor contends the evidence produced by Sutherland in the trial court was insufficient to support an award of damages to Sutherland representing the salary he would have received from Conceptual Solutions had Gaylor not breached the Agreement of Association. Gaylor claims that "[n]ot a scintilla of evidence was presented at trial as to how * * * Sutherland's compensation was determined by Conceptual Solutions, * * * what Sutherland's compensation from Conceptual Solutions actually was, or * * * how Sutherland's compensation from Conceptual Solutions was impacted by Gaylor's competition." (Gaylor's Brief at 17.)

{¶ 46} Because we are reversing the trial court's judgment and remanding the matter for the trial court to award damages based on the gross profit Sutherland lost as a result of Gaylor's breach of the Agreement of Association, we need not determine whether the evidence is sufficient to support damages based on Sutherland's salary from Conceptual Solutions. Nevertheless, for the reasons set forth in our ruling on Sutherland's cross-assignment of error and Gaylor's third assignment of error, we must sustain Gaylor's first assignment of error as the evidence does not support a damage award of only $97,778.12.

## IV. CONCLUSION

{¶ 47} Having sustained Sutherland's cross-assignment of error and Gaylor's first assignment of error, but having overruled Gaylor's second and third assignments of error,

we reverse the judgment of the trial court and remand this matter for the trial court to enter judgment for Sutherland in the total amount of $222,223, plus interest.

*Judgment affirmed in part, reversed in part*;
*cause remanded with instructions.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____