[Cite as *Miller Transp., Inc. v. Hocking Athens Perry Community Action*, 2024-Ohio-1017.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Miller Transportation, Inc., | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 23AP-124 |
| v. | : | (C.P.C. No. 22CV-7631) |
| Hocking Athens Perry | : | (REGULAR CALENDAR) |
| Community Action, as Project | | |
| Administrator et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 19, 2024.

**On brief:** *Strauss Troy Co., LPA,* and *Alex S. Rodger,* for appellant. **Argued:** *Alex S. Rodger.*

**On brief:** *Dave Yost*, Attorney General, *William J. Cole*, and *Nathan S. Kott*, for appellee Ohio Department of Transportation; *Benesch, Friedlander, Coplan & Arnoff, Peter W. Hahn*, and *Eric B. Kjellander*, for appellee Hocking Athens Perry Community Action, as Project Administrator. **Argued:** *Eric B. Kjellander.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Miller Transportation, Inc. ("Miller"), appeals from the judgment of the Franklin County Court of Common Pleas granting the motion to dismiss appellant's amended complaint for injunctive relief ("amended complaint") filed by defendants-appellees, Hocking Athens Perry Community Action, as Project Administrator ("HAPCAP"), and the Ohio Department of Transportation ("ODOT"). For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2}   This matter arises from an intercity bus service contract under the GoBus: Ohio Rural Intercity Bus Program ("GoBus"). (Dec. 8, 2022 Am. Compl. at ¶ 1, 7.) The Federal Transit Administration ("FTA") oversees the Rural Intercity Bus Program. *Id.* at ¶ 7. The Rural Intercity Bus Program is designed to address the intercity bus transportation needs of rural populations. *Id.* at ¶ 8. Pursuant to 49 U.S.C. 5311(f), FTA funds provide supplemental financial support to transit operators providing intercity bus service. *Id.* at ¶ 10. In order to participate in the Rural Intercity Bus Program, ODOT established GoBus. *Id.* at ¶ 1, 7, 8. GoBus serves six routes.

{¶ 3}   HAPCAP is an Ohio nonprofit corporation that administers GoBus. *Id.* at ¶ 3. The FTA provides federal funds to ODOT, which in turn provides the funds to HAPCAP, which then uses the funds to enter into contracts with carriers for bus service and oversees the carriers' performance in GoBus.

{¶ 4}   In 2019, HAPCAP issued a 101-page Request for Proposal ("RFP") for the six GoBus routes. *Id.* at ¶ 19. Two carriers submitted proposals: Barons Bus, Inc. ("Barons") and Miller. *Id.* at ¶ 21, 23. HAPCAP, ODOT, and an advisory committee performed a detailed evaluation of the two proposals. *Id.* at ¶ 19, 28. Ultimately, HAPCAP awarded four routes to Miller, designated as Routes A, C, D, and E, and entered into a contract (the "Contract") with Miller to service these four routes. *Id.* at ¶ 27, 29. HAPCAP awarded two routes to Barons and entered into a contract with Barons to service these two routes. *Id.* at ¶ 27.

{¶ 5}   The Contract was in effect from January 1, 2020 to December 31, 2022. (Dec. 8, 2022 Am. Compl.; Ex. D at ¶ 2.) Pursuant to the Contract, HAPCAP could extend it "for up to two (2) additional one-year periods, at HAPCAP's sole and exclusive option." (Dec. 8, 2022 Am. Compl. at ¶ 31; Ex. D at ¶ 2.) In February 2022, pursuant to the Contract, HAPCAP requested Miller and Barons submit pricing for any additional period. (Dec. 8, 2022 Am. Compl. at ¶ 34; Ex. D at ¶ 2.) Miller submitted pricing and subsequently provided extensive responses to inquiries regarding the pricing. *Id.*

{¶ 6}   The Contract grants HAPCAP the right to reject Miller's pricing 60 days prior to the expiration of the initial contract period "and/or offer the routes to another contractor." (Dec. 8, 2022 Am. Compl. at ¶ 32, 35; Ex. D at ¶ 2.) On or about October 6,

2022, HAPCAP advised Miller that HAPCAP would not extend the Contract to service Routes A, C, D, and E. *Id.* at ¶ 36. HAPCAP awarded the routes to Barons beginning in 2023 after the Contract expired. *Id.* at ¶ 38, 39.

{¶ 7} On November 1, 2022, Miller filed its initial complaint. The basis of the complaint was R.C. 307.86, the county procurement statute. (Nov. 1, 2022 Compl. at ¶ 1, 12, 36, 37, 40, 43, 50, 51, 53.) On November 7, 2022, Miller filed a motion for a temporary restraining order ("TRO") and preliminary injunction "restraining [appellees] from improperly awarding the [Contract] to Barons Bus or any other third party contractor." (Nov. 7, 2022 Mot. for Temporary Restraining Order & Prelim. Inj. at 1.) On November 8, 2022, the trial court held a hearing[1] on the motion for TRO, and on November 14, 2022, the trial court issued its entry denying the motion for TRO. (Nov. 14, 2022 Entry Den. Pl.'s Mot. For Temporary Restraining Order Filed Nov. 7, 2022.)

{¶ 8} On December 2, 2022, appellees jointly moved to dismiss the complaint because they are not a county subject to the statute. (*See* Appellant's Brief at 3.) Rather than opposing the motion, on December 8, 2022, Miller filed an amended complaint. (Dec. 8, 2022 Am. Compl. for Injunctive Relief.) In it, appellant alleged a claim for declaratory relief, pursuant to R.C. 2721.03, as to both appellees, breach of contract as to HAPCAP, and breach of procurement regulations (sic) as to both appellees. The essence of all claims alleged by Miller is that appellees violated various federal procurement requirements by awarding Miller's four previously awarded routes to Barons after the expiration of the initial two-year contract period without issuing a new RFP. (Dec. 8, 2022 Am. Compl. at ¶ 44, 48, 54, 60.)

{¶ 9} On December 16, 2022, Miller filed a second motion for TRO and preliminary injunction, again requesting that the court issue an order "restraining [appellees] from improperly awarding the [Contract] to Barons Bus or any other third party contractor." (Dec. 16, 2022 Mot. for Temporary Restraining Order & Prelim. Inj. at 1.) On December 22, 2022, the court held a hearing on the motion for TRO and subsequently denied the motion by entry on the same day. (Dec. 22, 2022 Entry Denying Pl.'s Mot. for Temporary Restraining Order Filed Dec. 16, 2022.)

---

[1] No transcript of the November 8, 2022 hearing was ordered or prepared, and thus, is not part of the record.

{¶ 10} Meanwhile, on December 21, 2022, appellees filed their joint motion to dismiss the amended complaint, pursuant to Civ.R. 12(B)(6). After full briefing, on February 8, 2023, the trial court issued its order granting the joint motion and dismissing Miller's amended complaint, with prejudice. (Feb. 8, 2023 Order Granting Defs.' Joint Mot. to Dismiss Am. Compl, Filed Dec. 21, 2022.)

{¶ 11} On February 23, 2023, Miller timely filed a notice of appeal, which is now before the court.

## II. Assignments of Error

{¶ 12} Miller asserts the following four assignments of error for our review:

> [I.]     The trial court erred in finding that Miller failed to plead a claim for declaratory relief.
>
> [II.]    The trial erred in finding that HAPCAP did not breach the Contract.
>
> [III.]   The trial court erred in dismissing Miller's claim for breach of the Procurement Regulations.
>
> [IV.]    The trial court erred in dismissing the Amended Complaint with prejudice for failure to join an indispensable party.

## III. Law and Analysis

### A. Standard of Review

{¶ 13} A de novo standard of review is employed by the appellate court when reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Pankey v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-701, 2014-Ohio-2907, ¶ 7; *Foreman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 14} A motion to dismiss, pursuant to Civ.R. 12(B)(6), is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992), citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). A trial court may not rely on allegations or evidence outside the complaint when reviewing a Civ.R. 12(B)(6) motion. *State ex rel.*

*Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997). In addition, the trial court must presume all factual allegations contained in the complaint are true and must make all reasonable inferences in favor of the nonmoving party. *Jones v. Greyhound Lines, Inc.*, 10th Dist. No. 11AP-518, 2012-Ohio-4409, ¶ 31, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint. *Lane v. U.S. Bank N.A.*, 10th Dist. No. 22AP-358, 2023-Ohio-1552, ¶ 23, citing *Morrow v. Reminger & Reminger Co. LPA*, 10th Dist. No. 08AP-925, 2009-Ohio-2665, ¶ 7.

## B. Appellant's First Assignment of Error

{¶ 15} In Miller's first assignment of error, it asserts the trial court erred in finding that Miller failed to plead a claim for declaratory relief. We disagree.

{¶ 16} Miller has alleged that the within controversy arises from the FTA Master Agreement, including 49 U.S.C. Chapter 53; 2 C.F.R 200; and FTA Circular 4220.1F. (Dec. 8, 2022 Am. Compl. at ¶ 44.) As we have previously observed, " '[i]t is generally recognized that a contract is binding only upon the parties to that contract.' " *Sutherland v. Gaylor*, 10th Dist. No. 20AP-257, 2021-Ohio-1941, ¶ 20, quoting *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 275 (1994); *Cleveland Window Glass & Door Co. v. Natl. Surety Co.*, 118 Ohio St. 414 (1928). "Accordingly, only a party to the contract or an intended third-party beneficiary has enforceable rights thereunder; an incidental third-party beneficiary does not." *Id.*, citing *TRINOVA Corp.* at 277; *Torrance v. Rom*, 8th Dist. No. 108818, 2020-Ohio-3971, ¶ 23; *Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991). *See also Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. No. 12AP-977, 2013-Ohio-3700, ¶ 29 ("Because appellant is neither a party to nor an intended third-party beneficiary of the 2010 annuity, he lacks standing to pursue his breach of contract claim."); *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 3rd Dist. No. 2-06-40, 2008-Ohio-1490, ¶ 25 (only the contracting party has standing to seek rescission based on breach of contract). Furthermore, " 'a party who fortuitously receives some benefit from the performance of a

contractual promise is an incidental, and not an intended, third-party beneficiary.' " *Sutherland* at ¶ 20, quoting *Prince v. Kent State Univ.*, 10th Dist. No. 11AP-493, 2012 Ohio App. LEXIS 896 *11 (Mar. 13, 2012), citing *TRINOVA Corp.* at 278; *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988).

{¶ 17} Here, the allegations in the amended complaint clearly show that Miller is not a party to the FTA Master Agreement. Indeed, Miller has specifically alleged that the parties to the Master Agreement are FTA and ODOT—*not* FTA and Miller. (Am. Compl., ¶ 11.) Neither has Miller alleged that it is an intended third-party beneficiary of the FTA Master Agreement. Thus, the trial court correctly determined that Miller lacks standing to assert any claims pursuant to the FTA Master Agreement, either directly or via a declaratory judgment action. *See, e.g., Slack v. Washington Metro. Area Transit Auth.*, 325 F. Supp.3d 146, 154 (D.C.Cir.2018) (finding a third-party may not enforce a Master Agreement's terms, stating that the Transit Authority's contract with the FTA "does not clearly convey rights to third parties[.]"); *Beard*, 2013-Ohio-3700 at ¶ 8 (dismissing a complaint because declaratory judgment cannot provide greater rights than a litigant would have in a direct cause of action).

{¶ 18} Furthermore, as the trial court found, Miller has not cited to any authority supporting the proposition that the U.S. Code, the Code of Federal Regulations, or the FTA Circular sections Miller relies upon for his claims provide for a private cause of action. While 49 U.S.C. 5325(a) directs the Secretary of the Department of Transportation to promulgate guidance to grant recipients to ensure "full and open competition," it does not provide for a private cause of action.[2] Likewise, although Miller cites to and quotes 2 C.F.R. § 200.319(a) in its amended complaint,[3] nothing in this regulation provides for a private cause of action. *Brooks v. Barrett*, M.D. Ala. No. 2:18-cv-565-GMB, 2018 U.S. Dist. LEXIS 194627, *19 (Nov. 15, 2018) (finding 2 § C.F.R. 200.319 does not create a legal basis for a disappointed bidder to sue because this regulation does not establish any federal rights); *First Transit, Inc. v. Pinellas Suncoast Transit Auth.*, M.D. Fla. No. 8:17-cv-814-T-36MAP LEXIS 193409, *14-15 (Oct. 30, 2017) (finding no federal cause of action arising out of a

---

[2] 49 U.S.C. § 5325(a) provides that any "[r]ecipients of assistance under this chapter shall conduct all procurement transactions in a manner that provides full and open competition as determined by the Secretary."

[3] *See* Am. Compl. at ¶ 13.

contract award which expressly referenced FTA Circular 4220.1F, and also finding that 49 U.S.C. 5325 does not create a private cause of action).

{¶ 19} Finally, we reject Miller's argument that its request for declaratory relief premised on public policy should have survived dismissal. Miller insists that certain language in the Contract relating to HAPCAP's option to reject Miller's quoted pricing for additional periods and/or to offer the routes to a contractor other than Miller is unenforceable and/or void for violating public policy. However, without statutory support for such a claim, it simply cannot survive a motion to dismiss. This is so because in the absence of a statutory requirement, courts will not impose a generalized policy in favor of competitive bidding. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 601 (1995) ("a public entity is not required to engage in competitive bidding in the absence of legislation requiring it."). Miller has not alleged or otherwise cited to any statutory requirement for competitive bidding, including but not limited to a requirement that a second RFP be issued in this case. Therefore, Miller's claim for declaratory judgment based on public policy fails as a matter of law.

{¶ 20} Accordingly, based on the foregoing, Miller's first assignment of error is overruled.

## C. Appellant's Second and Third Assignments of Error

{¶ 21} Miller's second and third assignments of error are interrelated, and we therefore address them together. In these assignments of error, Miller asserts the trial court erred in finding that HAPCAP did not breach the Contract and further erred in dismissing Miller's claim for breach of the procurement regulations. Neither assignment of error has merit.

{¶ 22} The construction of written contracts involves issues of law that appellate courts review de novo. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. When construing a contract, a court's primary objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 I St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 I St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must construe the contract as a whole and give effect, if possible, to

every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 I St.3d 353, 361-62 (1997). If an undefined term is used in a contract, a court will give that word its ordinary meaning, unless manifest absurdity results or some other meaning is clearly evidenced in the contract. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 I St.3d 397, 2011-I-2720, ¶ 38.

{¶ 23} When the parties to a contract disagree on the meaning of the language in the contract, a court "must first look to the four corners of the document to determine whether an ambiguity exists." *Antonucci v. I Dept. of Taxation*, 10th Dist. No. 09AP-629, 2010-I-3326, ¶ 8, citing *Buckeye Corrugated, Inc. v. DeRycke*, 9th Dist. No. 21459, 2003-I-6321. " '[I]f the contract terms are clear and precise, the contract is not ambiguous and the trial court is not permitted to refer to any evidence outside of the contract itself.' " *Id.*, quoting *Ryan v. Ryan*, 9th Dist. No. 19347, 1999 I App. LEXIS 5001, *8 (Oct. 27, 1999). Likewise, when a written instrument is unambiguous, parol evidence will not be considered in an attempt to demonstrate an ambiguity that otherwise does not exist. *Id.*, citing *Shifrin v. Forest City Enterprises, Inc.*, 64 I St.3d 635, 638 (1992), citing *Stony's Trucking Co. v. Pub. Util. Comm.*, 32 I St.2d 139, 142 (1972).

{¶ 24} Here, as noted above, Miller alleges, and thus concedes, that the Contract between HAPCAP and Miller was in effect from I 1, 2020 to I 31, 2022. (Dec. 8, 2022 Am. Compl.; Ex. D at ¶ 2.) Pursuant to the Contract, HAPCAP could extend it "for up to two (2) additional one-year periods, at HAPCAP's sole and exclusive option." (Dec. 8, 2022 Am. Compl. at ¶ 31; Ex. D at ¶ 2.) In I 2022, pursuant to the Contract, HAPCAP requested Miller and Barons submit pricing for any additional period. (Dec. 8, 2022 Am. Compl. at ¶ 34; Ex. D at ¶ 2.) Miller submitted pricing and subsequently provided extensive responses to inquiries regarding the pricing. *Id.*

{¶ 25} Miller also alleges, and thus concedes, that the Contract grants HAPCAP the right to reject Miller's pricing 60 days prior to the expiration of the initial contract period "and/or offer the routes to another contractor." (Dec. 8, 2022 Am. Compl. at ¶ 32, 35; Ex. D at ¶ 2.) This language is clear, precise, and unambiguous. Furthermore, this is exactly what occurred in this case. Thus, as a matter of law, HAPCAP did not breach this portion of the Contract with Miller.

{¶ 26} In addition, Miller also alleges and again, therefore concedes, that the Contract provides, "[i]n the alternative, HAPCAP *may elect* to advertise some or all of the routes through RFP." (Emphasis added.) (Dec. 8, 2022 Am. Compl. at ¶ 33; Ex. D at ¶ 2.) There is nothing about the foregoing language that is in any way unclear, imprecise, or ambiguous. The decision to issue another RFP—or not—was left entirely to the discretion of HAPCAP under the clear and unambiguous terms of the Contract. Therefore, as a matter of law, nothing in the Contract required HAPCAP to issue a second RFP and HAPCAP did not breach its Contract with Miller by declining to issue the same.

{¶ 27} Accordingly, based on the foregoing, we overrule Miller's second and third assignments of error.

### D. Appellant's Fourth Assignment of Error

{¶ 28} Miller asserts in his fourth assignment of error that the trial court erred in dismissing the amended complaint with prejudice for failure to join an indispensable party. This assignment of error is meritless.

{¶ 29} A plain reading of the trial court's February 8, 2023 order granting defendants' joint motion to dismiss amended complaint, filed December 21, 2022, and dismissing the case shows that although the court did indeed find that Barons was a necessary party—which apparently the court had warned Miller should have been joined—the dismissal was in no way premised upon this finding. Instead, the February 8, 2023 order clearly states simply, "[f]or the above reasons, the Court finds Miller has failed to join a necessary party." (Feb. 8, 2023 Order at 15.)

{¶ 30} Notably, Miller is not asserting the trial court erred in making the finding that Barons was a necessary party in the first instance. Even if that is what Miller were asserting, Miller would be wrong. An appellate court reviews a trial court's decision as to whether a person is a necessary party under an abuse of discretion standard. *Ford Motor Credit Co. v. Ryan*, 10th Dist. No. 09AP-501, ¶ 67, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 184 (1984). The trial court correctly found that Barons is a necessary party in this matter because Miller is asking that Barons' current contract with HAPCAP for Miller's previous routes be invalidated. *See* Civ.R. 19; Civ.R. 19.1.

{¶ 31} Furthermore, we also note that the trial court states in its Feb. 8, 2023 order that "despite this Court's warning during the most recent TRO hearing, Miller has failed to

join Barons as a party." (Feb. 8, 2023 Order at 14.) As previously observed by us, Miller did not file or even order the transcripts for either of the TRO hearings. Thus, there is no way for us to review what discussion may have ensued between the court and Miller on this point. Because no transcripts were filed as part of the record below, this court must presume regularity in the proceedings and that what the trial court stated it said at the hearing is uncontroverted—i.e., that the trial court warned Miller to join Barons as a necessary party. *See, e.g., Herren v. Herren*, 10th Dist. No. 19AP-271, 2020-Ohio-1010, ¶ 10 (stating "[w]ithout a transcript, 'this court must presume the regularity of the proceedings below and affirm the trial court's decision.' " [and] " '[w]here a party to an appeal fails to file portions of the transcript necessary for resolution of [the] assignments of error, the assignments will be overruled,' " quoting *Lee v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 10). Yet, inexplicably, despite being warned by the trial court to do so, Miller failed to join Barons. It is therefore wholly disingenuous for Miller to argue in its brief that "the proper course of action in the event Barons were deemed indispensable would be to direct amendment of the pleadings to add Barons, not dismissal of the Amended Complaint in its entirety," when it is apparent that the trial court had already directed Miller to do just that. (*See* Brief of Appellant at 35.)

{¶ 32} In any event, as we have already determined, the trial court did not base its decision to grant the motion to dismiss and dismiss Miller's amended complaint on Miller's failure to join a necessary party. Accordingly, Miller's fourth assignment of error is overruled.

## IV. Disposition

{¶ 33} Having overruled all four of Miller's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and DORRIAN, J., concur.

_____